545 So.2d 571 (1989)
STATE of Louisiana, Appellee,
v.
Yvonne Annette COUTEE and Tony Charles Lewis, Appellants.
No. 20464-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1989.
Rehearing Denied June 1, 1989.
*573 Culpepper, Teat & Avery by Bobby L. Culpepper, Jonesboro, for appellants.
William J. Guste, Jr., Baton Rouge, Atty. Gen., Charles B. Bice, Dist. Atty. and Kermit M. Simmons, Asst. Dist. Atty., Winnfield, for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendants, Yvonne Annette Coutee and Tony Charles Lewis, appeal their convictions and sentences for distribution of cocaine, in violation of LSA-R.S. 40:967. Defendant Coutee was sentenced to five years at hard labor, and defendant Lewis was sentenced to six years at hard labor. For the reasons assigned below, we affirm the defendants' convictions and sentences.

FACTS
In March of 1987, Louisiana State Police Trooper Henry Whitehorn and Natchitoches Parish Deputy Reginald Fields, who was on assignment in Winn Parish, were engaged in an undercover narcotics operation. At approximately 11:00 a.m. on March 27, 1987, Officer Whitehorn and Deputy Fields went to Coutee's apartment in the South Winnfield Projects in Winnfield, Louisiana. Coutee answered the door and admitted the officers after Deputy Fields asked for "T.C." They followed her into the apartment and saw defendant Lewis in bed in the bedroom. Deputy Fields told Lewis that he needed "coc" [coke].[1] Lewis, who *574 occasionally lived with Coutee, told her to "take care of it."
Coutee walked over to the living room sofa and removed a bag from between the cushion and the arm rest. The clear plastic bag contained several small baggies, each of which contained a white powdery substance. In exchange for one such baggy, the officers paid Coutee sixty dollars (three twenty dollar bills) and received ten dollars in change.
The officers then left the apartment and returned to their undercover vehicle, where they made notations about the transaction. Deputy Fields placed the baggy in his shirt pocket, where it remained until later that afternoon when he and Trooper Whitehorn met with Deputy Gregg Davies of the Winn Parish Sheriff's Office and Louisiana State Police Trooper Stanley Martin. At that time, Trooper Whitehorn and Deputy Davies packaged the baggy inside another clear plastic bag which they labeled. Trooper Whitehorn then deposited the bag in the evidence safe at Troop G Headquarters. He later transported the bag to Dempsey Alford at the Northwest Louisiana Criminalistics Laboratory. Mr. Alford, a forensic chemist, analyzed the white substance in the bag and determined that it was cocaine. Mr. Alford ultimately delivered the evidence to the prosecutor at the commencement of this trial.
The defendants were arrested on April 9, 1987, and charged by bill of information with distribution of cocaine, in violation of LSA-R.S. 40:967(A)(1). Both pled not guilty. Following a jury trial on October 27 and 28, 1987, the defendants were convicted of distribution of cocaine. Coutee was sentenced to a term of imprisonment of five years at hard labor, and Lewis was sentenced to six years at hard labor.
The defendants jointly appeal, asserting twenty assignments of error, several of which may be grouped together or are repetitive.

ASSIGNMENT OF ERROR NO. 1
The defendants argue that, as the state failed to present any evidence at the preliminary examination, the arrests and arrest warrants should have been quashed and all charges dismissed. This assignment of error is without merit. Although the failure of the state to produce any evidence at the preliminary examination may result in the defendant's release from custody or bail, it does not result in a judicial dismissal of the charges. See State v. Mayberry, 457 So.2d 880 (La.App. 3rd Cir.1984), writ denied, 462 So.2d 191 (La.1984).

ASSIGNMENT OF ERROR NO. 2
The defendants argue that the trial court erred in overruling their motion to quash the petit jury venire which was based on the allegation that the district attorney sent out jury questionnaires similar to the one disapproved in State v. Bates, 508 So.2d 1346 (La.1987). The uncontroverted testimony of the district attorney given at a hearing on July 13, 1987, demonstrated that his office had sent no questionnaires of any kind to the prospective jurors. As there is no factual basis for the defendants' allegation, this assignment of error is also without merit.

ASSIGNMENT OF ERROR NO. 3
The defendants contend that the trial court erred in overruling their motion for change of venue. By agreement of the state and the defendants, every eighth juror on the jury venire list was questioned about his or her knowledge of the widespread drug bust and sting operation which lead to the defendants' arrests.
In order to warrant a change of venue, the defendants must show more than mere public knowledge of facts surrounding the offense. They must show that such prejudice existed in the collective mind of the community that a fair trial was impossible. State v. Henry, 446 So.2d 1308 (La.App. 2d Cir.1984).
Our careful, independent review of the prospective jurors' responses leads us to conclude that the prerequisite prejudice did not exist in the community. Therefore, this assignment of error is without merit.

*575 ASSIGNMENT OF ERROR NO. 4
The defendants, who are black, argue that the state exercised a peremptory challenge to excuse Annie B. Tatum, a black prospective juror, without a racially neutral reason as required by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
Batson requires the defendant to make a prima facie showing of purposeful discrimination by the prosecution in its exercise of peremptory challenges. We are not satisfied that the defendant made a prima facie showing on this issue.[2] Regardless, we find that the prosecution sufficiently provided a neutral explanation for the exercise of the peremptory challenge against Ms. Tatum. She knew both defendants, their families, and other defendants who were arrested in the Winn Parish drug bust. Also, the assistant district attorney prosecuting the defendant had personally prosecuted Ms. Tatum and her sons. See State v. Gardner, 524 So.2d 1271 (La.App. 3rd Cir.1988), writ denied, 530 So.2d 89 (La. 1988).
We find this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5
The defendants argue that the trial court erred in allowing Trooper Whitehorn to testify as to Lewis' statement to Coutee to "take care of" the cocaine sale. The statement was clearly part of the "res gestae" and was thus admissible. See former LSA-R.S. 15:447 and 448.[3] This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. 6
The defendants assign as error the trial court's refusal to grant a mistrial after Trooper Whitehorn testified that he was told that he and Deputy Fields would be "buying suspected narcotics from drug dealers in Winnfield." After denying defendant's motion for mistrial, the trial court admonished the jury to disregard this remark, as requested by defense counsel.
A police officer is not a "court official" under LSA-C.Cr.P. Art. 770, and absent a showing of a pattern of unresponsive answers or improper intent by the officer, a mistrial is not required. The appropriate remedy for inappropriate remarks by a police officer is an admonishment to the jury to disregard the remark. LSA-C.Cr.P. Art. 771; State v. Tatum, 506 So.2d 584 (La. App. 4th Cir.1987).
Trooper Whitehorn's comment appeared to be a good faith attempt to respond to defense counsel's question: "Did Deputy Davies tell you to go try to buy from T.C. Lewis?" Additionally, we observe that the remark cannot be construed as being so highly prejudicial as to deprive the defendants of a fair trial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. 7
The defendants claim that the trial court erred in allowing Trooper Whitehorn to explain what "coke" denotes in the drug trade without being qualified as an expert in narcotics.
We find that this assignment of error is without merit. It is common knowledge that "coke" is generally used as slang for "cocaine." The court and jury may take judicial notice of this usage, which is so prevalent in our society's modern vernacular. See former LSA-R.S. 15:422(6).[4]
This assignment is without merit.

*576 ASSIGNMENTS OF ERROR NOS. 8, 9, 10 AND 11
The defendants argue that on four different occasions the trial court erroneously refused to allow them to ascertain whether Deputy Fields had given prior inconsistent statements. Each of these questions involved either testimony which Deputy Fields had given in totally unrelated criminal cases or testimony about his records in those cases. The state objected to the questions. The trial court sustained the objections on the basis of defense counsel's failure to lay a proper foundation and the lack of relevance to the cases on trial.
We find that the trial court was correct in its rulings. An examination of the record demonstrates that defense counsel did not properly lay a foundation for impeachment as required by former LSA-R.S. 15:493.[5] Furthermore, the issues raised by the questions were not relevant to the defendants' trial. See former LSA-R.S. 15:494; also, State v. Martin, 310 So.2d 544 (La.1975), in which the defendant was not allowed to impeach a witness with testimony concerning his alleged failure to account for funds in his previous investigative work.
Therefore, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 12 AND 13
The defendants' next two assignments of error involve Deputy Fields' response to defense counsel's question as to whether he had previously testified at another trial that he did not see defendant Lewis from February 17, 1987 until the arrest in April of 1987, even though the instant crime allegedly occurred on March 27, 1987. Deputy Fields responded that he had so testified. The state requested that the witness be allowed to explain his answer. The defense requested that the jury be excused while the matter was argued. After the jury was removed, the trial court stated for the record the contents of a bench conference held off the record prior to the removal of the jury. The trial court stated: "In conference at the Bench, the court has been informed that the purpose for which Mr. Fields answered at the first trial of Mr. Lewis that he did not see him from February 17 until the time of the arrest would be to avoid any mention of another crime committed by the defendant in the presence of the jury...." The defense objected to the trial court indicating in Mr. Fields' presence what the appropriate answer would be. After the jury was returned to the courtroom, the trial court gave Deputy Fields the opportunity to explain his answer. He responded: "Okay. My reason for the testimony was not to bring one case into another."
On appeal, the defendants argue the trial court erred in allowing Deputy Fields to explain, when not asked as part of the question and while still on cross examination, why he had previously testified that he did not see defendant Lewis from February 17, 1987, until April of 1987. However, we find that it was proper to allow the witness an opportunity to explain his testimony. If the trial court erred in allowing the witness to explain while still on cross-examination, it was harmless error as the state would have been entitled to question him on the issue on redirect examination. State v. Hollingsworth, 337 So.2d 461 (La.1976); State v. Western, 355 So.2d 1314 (La.1978). As the defendants have not demonstrated any prejudice, this assignment of error is meritless.
The defendants also reurge their objection that the trial court led the witness as to how to answer the question. Examination of the record indicates that the trial court was merely completing the record by reciting what had transpired during the bench conference. We find no indication of a lack of impartiality on the part of the trial judge. Additionally, we observe that, as the defendants concede in brief, the jury was absent during the complained *577 of exchange. Thus, the defendants' reliance upon LSA-C.Cr.P. Art. 772 and 806 is misplaced.[6]
This assignment of error is also without merit.

ASSIGNMENT OF ERROR NO. 14
The defendants contend that the trial court erred in allowing the introduction of the purchased cocaine into evidence without a proper foundation and without a proper chain of evidence.
A review of the record indicates that the cocaine was properly admitted. The testimony of the undercover officers, one of whom transported the cocaine first to the evidence locker at Troop G headquarters and then to the Crime Lab for analysis, and of the chemist who analyzed the substance and brought it to court, established that it was more probable than not that the cocaine which was introduced into evidence was the same cocaine purchased by the undercover officers from the defendants. See State v. Sharp, 414 So.2d 752 (La. 1982); State v. Dunn, 452 So.2d 304 (La. App. 2d Cir.1984), writ denied, 457 So.2d 18 (La.1984).
We are unaware of, and the defendants have failed to disclose, any deficiencies in the chain of evidence. Thus, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. 18 AND 19
The defendants argue that the trial court erred in failing to grant a mistrial or impose sanctions because of the state's failure to produce the entire initial police report or to disclose the identity of a reliable confidential informant.
Neither of these claims has a factual basis. A review of the record discloses that on August 3, 1987, the state supplemented its response to the defendants' motion for discovery by filing the initial police report. This included Trooper Whitehorn's two page report and Deputy Fields' two page report. There is nothing in the record to indicate that there were any supplemental reports not disclosed by the state.
Furthermore, both officers specifically denied the presence or involvement of a confidential informant in the present case. The defendants presented no evidence to contradict the testimony of the officers.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 15, 16 AND 17
The defendants contend that the trial court erred in denying the motion for a post verdict judgment of acquittal, new trial, and/or in arrest of judgment. The motion was filed December 14, 1987, and denied on January 18, 1988, immediately prior to the sentencing of the defendants.[7]
Many of the allegations contained in the motion appear to have no factual basis.[8] Several allegations have already been addressed in previous assignments of error.[9] Others contained only conclusory allegations.[10]
We construe the remaining allegations concerning the evidence and the testimony adduced at trial as presenting the issue of sufficiency of evidence.
*578 In reviewing sufficiency of evidence to support a conviction, the reviewing court must examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). All the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that a defendant is guilty beyond a reasonable doubt. State v. Arrington, 514 So.2d 675 (La.App. 2d Cir. 1987).
Where there is conflicting testimony in factual matters, the issue of credibility of witnesses is within the sound discretion of the trier of fact and should not be disturbed on review unless clearly contrary to the evidence. State v. Hoyt, 464 So.2d 841 (La.App. 5th Cir.1985).
When viewed in the light most favorable to the prosecution, the evidence demonstrates that the defendants participated as principals in the distribution of a controlled dangerous substance, cocaine, LSA-R.S. 14:24 and 40:967, and they were guilty beyond a reasonable doubt. The officers testified that they went to the apartment inhabited by the defendants. While there, one of the officers told Lewis, who he positively identified, that he wished to purchase some cocaine. Lewis told Coutee to "take care of" the purchase. Coutee produced at least one small bag of cocaine, which had been concealed in the sofa, and transferred it to the officers. One of the officers paid Coutee sixty dollars in three twenty dollar bills and received ten dollars in change. Scientific analysis confirmed that the bag contained cocaine.
The defendants argue that the contradictions between the testimony of Trooper Whitehorn and Deputy Fields destroyed the credibility of both witnesses. The officers differed as to who set the price for the cocaine sale and when the money was exchanged. Trooper Whitehorn testified that Coutee set the price for the cocaine, and that the purchase price was paid after they examined the contents of the bag. Deputy Fields testified that he was aware of the "going rate" for such a purchase and that he didn't "think" Coutee mentioned the price. Also, he testified that the money was given to Coutee before she produced the bag of cocaine. He admitted that his initial police report referred only to Coutee producing one small bag from the sofa. However, he also testified that the report only contained a brief summary of the transaction and was not intended to set forth all the facts in detail.
Defendant Coutee testified as the only witness for the defense. She stated that she had never even seen Trooper Whitehorn prior to the trial. She claimed that she first saw Deputy Fields at a court hearing in August, 1987. Although she testified that she did not specifically remember March 27, 1987, she also stated that defendant Lewis, who was residing with her at the time, would not have been in the apartment as late as 11:00 a.m., the approximate time of the cocaine sale. She denied ever selling cocaine at her apartment, allowing strangers in the apartment, or wearing a scarf on her hair, as the officers described. She further denied that her sofa had a space between the arm rest and the seat, where the drugs were allegedly hidden.
The trier of fact is accorded much discretion in evaluating the credibility of witnesses. Obviously, the jury elected to accept the testimony of the officers, with its minor discrepancies, over that of Coutee. We do not find that the officers were so inconsistent as to render their testimony unworthy of belief as argued by the defendants.
Based on the foregoing, we find that there was sufficient evidence upon which to base the convictions of the defendants as charged. Thus, we find that this assignment of error is also meritless.

ASSIGNMENT OF ERROR NO. 20
The defendants contend that the trial court erred in imposing unconstitutionally excessive sentences upon them. Defendant Coutee was sentenced to five years at hard labor, and defendant Lewis was sentenced to six years at hard labor.
*579 LSA-R.S. 40:967(B)(1) provides for a minimum term of imprisonment of five years at hard labor and a maximum term of thirty years at hard labor for distribution of a Schedule II narcotic drug such as cocaine. [See LSA-R.S. 40:961(23).] A fine of not more than $15,000 is also authorized.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La. 1984).
A trial court is not required to render a suspended sentence or probation on a first felony offense, but may consider whatever factors and evidence are deemed important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, supra.

Lewis' Sentence
Defendant Lewis was thirty-three years old at the time of sentencing. Consequently, the trial court found that he was not a youthful offender. Before imposing sentence, the trial court discussed Lewis' criminal background in detail.
Between 1977 and 1983, the defendant was convicted on four charges of speeding. In conjunction with one speeding charge, Lewis was also charged with DWI, which was subsequently reduced to a charge of reckless operation of a vehicle. A 1986 charge of aggravated arson was still pending. On the date defendant Lewis was arrested for the present offense, he was also arrested on two other counts of distribution of cocaine and one count of distribution of marijuana. An August, 1987 trial on those charges resulted in a mistrial; the case was scheduled for another trial in February, 1988.
The presentence investigative (PSI) report indicated that Lewis graduated from high school in 1973. He claimed to have *580 served in the army from 1973 to 1976. He married in 1977, and two children were born of this marriage, which ended in 1985 when the parties separated. At the time the PSI was compiled, Lewis claimed to be living with his mother.
At the sentencing hearing, Lewis stated that his only income was derived from performing occasional odd jobs for an aunt. His previous employment included work as an oil field laborer, a precinct constable (in Texas), and a laborer at his mother's boarding house.
The trial court found that Lewis would not respond favorably to probation and that there were no circumstances tending to justify his conduct.
We find that the sentence imposed upon Lewis was not excessive. He had a prior criminal record and the trial court correctly determined that Lewis was not living a law-abiding life. The circumstances before the trial court indicated that he was engaged in the systematic distribution of drugs for profit. Distribution of cocaine carries a minimum sentence of five years at hard labor. We find no error in the trial court's decision to impose a sentence only slightly above this minimum.

Coutee's Sentence
According to the PSI report, Coutee, who was twenty-four years old when she was sentenced, had never been married. However, she had an eight-year-old daughter who was residing in California with her father. Coutee had lived in California until she was a young adult. Her last employment was in 1983 as a nurse's aid. The PSI reported that the defendants had lived together for two years, and, following their arrest, were residing with Lewis' mother. Coutee had one prior misdemeanor charge in 1986.
Defendant Coutee denied involvement in the offense, and alleged that the Sheriff's Office and the trial judge "had it in" for her. When questioned by the trial court, she conceded that she had no factual basis for this claim.
The trial court found that there was no justification for Coutee's criminal conduct. It further believed that she would not respond favorably to probation. The trial court noted that the PSI recommended Coutee for the intensive incarceration and intensive parole supervision [IMPACT] programs. However, the trial court declined to follow this recommendation, and imposed a sentence of five years at hard labor, the minimum term of imprisonment.
We find no error in the trial court's imposition of sentence. As previously noted, not all first felony offenders are entitled to probation. Coutee had been unemployed for several years. Although her young daughter was living with her at the time of the offense, the child was residing with her father in California at the time of sentence. The PSI report indicated that Coutee's resources included AFDC funds and food stamps.
Even after her conviction, Coutee displayed a lack of remorse. When interviewed by the probation officer who compiled the PSI report, she denied involvement in the offense, even though she had been positively identified as a principal in the commission of the crime. She further contended the trial court "had it in for her," and "probably everybody else." Given Coutee's attitude, we cannot say the trial court erred in finding that Coutee would not benefit from a suspended sentence and probation or the IMPACT Program. Coutee, like Lewis, was apparently engaged in the systematic distribution of drugs for profit.
This assignment of error is without merit.

CONCLUSION
The convictions and sentences of the defendants are affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before MARVIN, NORRIS, LINDSAY, SEXTON and HIGHTOWER, JJ.
Rehearing denied.
NOTES
[1] Throughout the transcript, the court reporter repeatedly spelled the word "coc" instead of "coke."
[2] The composition of the jury which convicted the defendant was seven blacks and five whites. The state had twelve peremptory challenges per defendant. Of the fifty-two prospective jurors examined on voir dire, the state removed nine through peremptory challenges; seven of these were black. Most of the black prospective jurors so excused knew one of the defendants, members of their families, or other persons arrested in the Winn Parish drug bust. A black female was challenged for cause because of her health without defendants' objection. A white male was also successfully challenged for cause.
[3] These statutes were repealed effective January 1, 1989, with the enactment of the new Louisiana Code of Evidence.
[4] This statute was repealed effective January 1, 1989, with the enactment of the new Louisiana Code of Evidence.
[5] This statute and LSA-R.S. 15:494 were repealed effective January 1, 1989, with the enactment of the new Louisiana Code of Evidence.
[6] Article 772 provides:

The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. [emphasis ours]
Article 806 provides:
The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. [emphasis ours]
[7] The defendants specifically waived the delay provided in LSA-C.Cr.P. Art. 873.
[8] Among these allegations are those in paragraph 11, 12, 13, 14, 22, and 23.
[9] These include paragraphs 7, 9, 13, 15, 16, 17, 18, 19, 22, 23, 29, 33, and 34.
[10] These allegations include those made in paragraphs 7 and 8.