598 So.2d 1184 (1992)
STATE of Louisiana
v.
Kevin J. MERRICK.
No. 91-KA-0305.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1992.
Rehearing Denied June 17, 1992.
*1185 Darryl W. Bubrig, Sr., Dist. Atty., Pointe-A-La-Hache, for plaintiff/appellee.
Timon Webre, Pointe-A-La-Hache, for defendant-appellant.
Before SCHOTT, C.J., WARD, J., and ALVIN RUDY EASON, J. Pro Tem.
SCHOTT, Chief Judge.
Defendant was convicted of distribution of cocaine in violation of LSA-R.S. 40:967 and sentenced to five years.
Early in 1989 the Plaquemines Parish Sheriff's Office conducted "Operation Crackdown" which was an undercover operation designed to apprehend individuals selling crack cocaine. Officer Illg was in charge and Officers Bolar and Augustine from the Gretna Police Department participated.
On April 7, 1989 the three officers met and Illg sent the others to JU's lounge in Sunrise to try to make drug purchases. This lounge was known for drug sales. Bolar and Augustine had been going to the lounge in order to gain acceptability and on this night the defendant approached Bolar shortly after they arrived and asked him if he wanted to buy some drugs. Bolar accompanied the defendant down a hall to a back room where he told the defendant he wanted to buy some crack. As he entered the hall with the defendant Augustine got a look at the defendant. In the back room defendant produced a match box containing *1186 rocks of crack from which Bolar selected two and for which he paid defendant fifty dollars. Bolar and Augustine left and met Illg. Bolar told him he bought the crack from someone named Kevin Merrick and both officers picked defendant's photograph from an array presented by Illg.
A review of the record for errors patent reveals none.
Defendant's first assignment of error addresses jury selection from a venire from which a jury had previously been empaneled and excluded from the venire for his case. He first argues that such a procedure is not authorized C.Cr.P. art. 784 by which requires that "names be drawn from the petit jury panel, indiscriminately and by lot in open court and in manner to be determined by the court" because his jury came not from the venire but from the "rump", only a part, of the venire. He then argues that this procedure infringed upon his peremptory challenge rights, theoretically circumvents the requirements of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), could create a conflict of interests if the same attorney were representing defendants in consecutive cases for which the jurors were selected from the same venire, and deprived him of a random cross section of society with the unavailability of the jurors who served in the first case.
This procedure cannot be said to be in violation of the requirements of art. 784. Other than requiring indiscriminate selection and selection by lot the procedure is left to the discretion of the court. The procedure employed in this case did not constitute a per se abuse of discretion. Defendant's other arguments are all theoretical in that he does not show how his case was prejudiced by the procedure. C.Cr.P. art. 419 provides that a jury venire shall not be set aside for any reason except fraud, systematic exclusion based upon race, or "some great wrong committed that would work irreparable injury to the defendant." Defendant has not even attempted to show that such a wrong actually occurred in this case.
By his next assignment defendant accuses the state of violating C.Cr.P. art. 717 which provides:
Upon motion of the defendant, the court shall order the district attorney or the appropriate law enforcement agency to furnish to defendant a copy of any record of his criminal arrests and convictions that is in their possession or custody.
At the beginning of the second day of trial, when the jury had been selected the day before and before the first witness was called, the prosecutor informed the court that just the previous afternoon he learned from the records in the clerk's office that defendant had been convicted of carnal knowledge. Sometime before the trial the state in response to discovery had furnished defendant's attorney with a rap sheet which showed an arrest for carnal knowledge but not a conviction.
Art. 717 requires disclosure of what is in the possession or custody of the district attorney. According to the prosecutor this information about the conviction was not in his possession or custody. Defendant asserts in his appellate brief that the state had the conviction record in its custody by virtue of the fact that the same district attorney's office prosecuted him for the earlier offense.
There is no reason to believe that the prosecutor himself knew about the conviction before checking the clerk's records. Nor is there any reason why defendant's counsel could not have checked those records since he had known about the arrest for some time. No one was in a better position than defendant himself to know what became of his arrest and to tell his counsel about it. Consequently, the late disclosure caused no prejudice to defendant's case.
Defendant next assigns error in the trial court's denial of his motion for a mistrial during the state's direct examination of Officer Illg. Defendant made an issue over his testimony on direct examination that Bolar had picked defendant's photograph from an array of four shown to him by Illg. On cross examination defendant *1187 sought to impeach this testimony with a statement in the police report that Illg showed Bolar a photograph of Kevin Merrick. On redirect Illg explained that he always had a number of photographs with him to use as a lineup in an undercover operation. The following colloquy ensued:
Q. And the individuals that the photographs are of, how do you determine which photographs to include for a particular area that you are working?
A. Subjects that we know in the bar, that we get information of, subjects hanging out in the bar.
Q. Your other narcotics people tell you who they had seen there other nights?
The defense objected at this point on the ground that the State was attempting to elicit testimony from Illg that the defendant was a suspect or known to be involved in criminal activities. The trial court overruled the objection finding that "the line of questioning is appropriate with how he had the photographs in his possession. He explained in his earlier testimony the modus operandi of one of these undercover operations. And as I understand it, this is part of it."
The questioning continued:
Q. Agent, Illg, my last question to you was something along the lines, the photographs that you have to show the undercover officers when they come back from a buy, where do you get those photographs from?
A. Those photographs are obtained through the Sheriff's office.
Q. How did you get those photographs?
A. From detectives, from the jail, from the prison, from Belle Chasse. When a subject is arrested for various things, a photograph is taken of the subject. And one of those photographs is forwarded to the narcotics office.
Defendant moved for a mistrial which was denied. No admonition was requested or given.
Defendant argues that the trial court was required to declare a mistrial by C.Cr.P. art. 770(2) which mandates a mistrial when the district attorney or a court official during trial refers to another crime committed or alleged to have been committed by defendant as to which evidence is not admissible. A police officer is not a "court official" under this article and absent a showing of a pattern of unresponsive answers or improper intent, a mistrial is not required. State v. Tatum, 506 So.2d 584, 588 (La.App. 4th Cir.1987). There is no showing of such a pattern of testimony by Illg. However, a police officer's statements may be imputable to the state if the prosecutor deliberately elicits inadmissible information from the officer, and, in such a case, art. 770 would apply.
The fact that the prosecutor asked no such questions on direct examination indicates that he did not intend to elicit this information. Neither is such an intent evident from the first few questions quoted above. However, when the prosecutor asked the remaining questions after the bench hearing on defendant's objection such an intent seemed to surface.
A mere reference to another crime will not trigger the article; the reference must be to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Madison, 345 So.2d 485, 494 (1977). Thus, in State v. Harris, 258 La. 720, 247 So.2d 847, 849 (1971) the court remarked, "We doubt that the policeman's reference to obtaining the photographs [including defendant's] at the Bureau of Identification amounts to the assertion of a criminal record. Also, in State v. Calzadilla, 455 So.2d 1244, 1248 (La.App. 4th Cir. 1984), this court found that a police officer's testimony that he knew the defendant from another case did not amount to the assertion of a prior criminal record of the defendant.
In State v. Douglas, 389 So.2d 1263, 1266 (La.1980), the officer testified that after getting a description of the robber he got a report that a man fitting the description had been seen in a nearby bar and this man had recently been released from Angola. This referred to the defendant. The court rejected defendant's argument that the trial *1188 court erroneously denied his motion for a mistrial and commented as follows:
An investigating officer is a witness, but is closely related to the district attorney in presentation of the prosecutor's case. Therefore, a prejudicial remark by an experienced police officer should be viewed with considerable concern as to the fairness of the trial, and may require granting a mistrial, especially if the remark was precipitated by or should have been anticipated by the district attorney. Nevertheless, the decision as to the necessity of granting a mistrial in these circumstances was left to the sound discretion of the trial court. See State v. Madison, 345 So.2d 485 (La.1977); State v. Brown, 322 So.2d 211 (La.1975); State v. Schwartz, 354 So.2d 1332 (La.1978). The present case does not reveal a manifest abuse of discretion warranting the substitution of our judgment for that of the trial judge who conducted the trial, heard the remark, and was in the best position to assess its impact.
In the present case the evidence of defendant's guilt was overwhelming. There is no possibility that this isolated handful of questions vaguely and somewhat ambiguously suggesting that defendant had a criminal record had any impact on the jury's mind. As in the Douglas case we conclude that the action taken by the trial judge was not abusive of his discretion.
By his last assignment defendant contends that C.Cr.P. art. 893 pursuant to which he was sentenced denied him due process of law.
This statute prohibits the sentencing judge from suspending the sentence of a second offender unless the court finds the present offense did not include the use of a dangerous weapon, the previous conviction was at least five years before the occurrence of the present offense, and the defendant was not charged with any other felonies since the date of the first conviction.
In this case the defendant was previously convicted of a felony, but the first two conditions of the statute were met. However, at the time of the trial defendant was being held on a charge of second degree murder. The trial judge implied in his sentencing discussion that he would have considered suspension but for the pending charge against defendant.
Defendant argues that he should not be deprived of probation on the basis of an unproved charge. He asserts that the statute's irrationality is demonstrated by the fact that a defendant's probation cannot be revoked simply by an arrest and yet he is now being denied probation solely because of an arrest. At the sentencing hearing the trial judge specifically inquired of defendant if he had anything to state before being sentenced and he declined. Under these circumstances we are not persuaded that he was denied due process.
Accordingly, the convictions and sentences are affirmed.
AFFIRMED.
WARD, Judge, dissents.
I respectfully dissent.
I agree with that part of the majority's opinion that holds the trial court did not err in the procedure used to empanel the petit jury. I further agree with the majority opinion that the assistant district attorney did not violate C.Cr.P. art. 717 because the assistant district attorney did not have knowledge of the conviction and also because defense counsel has equal access to the Clerk's office records as well as the assistant district attorney.
However, I believe the trial court erred by not sustaining Merrick's objection to questioning from the assistant district attorney about the source of photographs used in the photo lineup. I agree with the majority as to the applicable law; and it is well stated in that opinion. I do not agree with the conclusions reached by the majority and I infer different conclusions from the questioning quoted in the majority opinion.
The assistant district attorney's persistent questioning of Officer Illg on a matter so irrelevant as the source of the photographs convinces me that he asked the question to convey to the jury inadmissible informationinformation, not evidenceof *1189 the worst sort. I believe the questioning was meant to show that Detective Illg, a police officer for many years, had prior knowledge of Merrick from which the jury could infer that Merrick was a police character who has been arrested before; that Merrick hung out in a bar where there was known narcotic activity from which the jury could infer guilty by association, that Detective Illg got the photo from the sheriff's office from which the jury could infer that it was a "mug shot" taken after a prior arrest. What reasonable explanation is there for such detailed and persistent questioning about something that is as irrelevant as the source of the photo? The only relevant question is one that would show the photo identified was indeed the photo of Merrick.
Under these circumstances the testimony of Detective Illg should be imputed to the state's attorney who obviously knew the answers that would be forthcoming, and who in my opinion desired to create an impermissible inference in the minds of the jurors. Because of the overwhelming evidence of guilt I would condemn the rulings of the trial court as error but harmless except C.Cr.P. art. 770(2) which requires the trial court to enter a mistrial. In this case it was error for the trial court not to do so.