614 So.2d 735 (1993)
STATE of Louisiana
v.
Robert S. DUCOTE.
No. 92-KA-861.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 1993.
*736 John D. Rawls, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for appellant/defendant Robert S. Ducote.
John M. Mamoulides, Dist. Atty., Leigh Anne Wall, Asst. Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for appellee State of La.
Before KLIEBERT, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Robert Ducote, appeals from his conviction of second degree murder. He was sentenced to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. We affirm the conviction, amend the sentence to give credit for time served and affirm the sentence as amended.
*737 Defendant was charged on October 31, 1990 by grand jury indictment with second degree murder, a violation of La.R.S. 14:30.1. He initially pled not guilty and filed several pretrial motions.[1] On June 20, 1991, he withdrew his former plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. Thereafter, on June 27, 1991, the trial court appointed a sanity commission to examine the defendant. On September 19, 1991, a sanity hearing was held and the trial court found the defendant competent to stand trial.
Prior to commencement of trial on May 20, 1992, the defendant withdrew his plea of not guilty and not guilty by reason of insanity and entered a plea of not guilty. At the conclusion of trial on May 21, 1992, the jury, by a ten to two vote, returned a verdict of guilty, as charged, to second degree murder.
On May 28, 1992, the defendant filed a motion to set aside the jury verdict. On July 1, 1992, the trial court denied the motion and sentenced the defendant to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.

FACTS:
On the morning of September 25, 1990, Officers Donovan and Raines of the Kenner Police Department responded to a possible domestic disturbance which had occurred earlier at 251 Baylor Street, Apt. D, in Kenner, Louisiana. They arrived and observed that the apartment door was partially open. They entered the apartment. When they received no response to their knocking, after "looking around" they found the body of a female laying on the bed in one of the bedrooms. The victim, later identified as Audrey Petit, was partially nude and appeared to have been beaten badly. Her neck was cut and there was a pool of blood underneath her body. The officers called for an ambulance and notified the detective bureau.
Detective Zimmerman arrived at the apartment and observed that there were two electrical cords, cut from kitchen appliances, on the bed near the body. One of the cords had been tied in a slip knot resembling a noose. On a small table next to the bed there was a steak knife which was "bent to a large angle, not quite 90 (degrees) but almost". Another steak knife was found laying on a pot holder on the kitchen counter. It had a dried blood-like substance on it.
Meanwhile, the Kenner Police Department received a telephone call from someone who identified himself as Robert Ducote. The caller stated that he had killed his wife, changing it to his girlfriend, and he was going to turn himself in to the police. When the defendant arrived at the police station, he appeared to "have been drinking but not intoxicated to the point where he didn't understand what was going on." He gave a statement in which he admitted to killing his girlfriend by stabbing her several times in the chest and slitting her throat. When asked if he had attempted to strangle her before he stabbed her, he responded, "Yes. We had a fight and I take that back. It wasn't premeditated. I killed her because I guess I loved her." He further admitted cutting the cords from the kitchen appliances and using two knives to stab the victim.
At trial, Dr. Susan Garcia, the forensic pathologist who performed the autopsy, testified that the victim sustained a fatal five-inch cut to her throat which severed her jugular vein, carotid artery, trachea and esophagus. She stated that the wound was so deep that it penetrated the vertebral body of her neck and the surrounding muscle. She testified that the victim had a linear abrasion which was "consistent with a small thin cord of some type" on the left side of the neck and that her eyes had "a finding" consistent with, but not diagnostic of, strangulation or suffocation ..." (Scleral hemorrhages or bruises from back-up of pressure from the blood being cut off). The victim also sustained a number of nonlethal *738 penetrating wounds and a few abrasions, primarily over her upper chest and neck regions. She did not sustain any "defensive wounds", which was consistent with her being incapacitated in some form when she was attacked with the knife.
On appeal, the defendant asserts that the trial court erred in denying his motion for mistrial based upon the prejudicial remarks made by a state witness which referred to other crimes, because:
a) The trial court misstated and misunderstood the mistrial rule; and
b) The remark made it impossible for the appellant to obtain a fair trial; and
c) The state invited the making of the remark by intentionally asking a series of overbroad questions in a dangerous area.
In support of this contention, the defendant argues that the trial court's comments in denying the motion shows that he misinterpreted the law by not realizing that he had an option to declare a mistrial. Thus, he was unable to "knowledgeably exercise "his discretion" and such misinterpretation constituted reversible error. Because the ten to two vote of the jury showed how close the jury was to acquitting the defendant of second degree murder, the defendant further argues that the "close call" of the jury verdict indicated that the remark was grossly prejudicial. Defendant also asserts that the remark was prompted by the prosecutor's open-ended questions and, consequently, a mistrial was mandated by statute.
During the state's direct examination of Elaine Kerlec, the victim's sister, the following exchange ensued:
"Q. How would you describe the relationship between Mr. Ducote and Miss Pettit?
A. It wasn't very good.
Q. How long did that relationship last?
A. They had been back together about two and a half years, I guess, when this happened.
Q. They had been together prior?
A. Back and forth, yes. He would
Q. SinceI mean for how long were they back and forth. Let's count it all up. How long had they been together?
A. I'd say close to maybe around 15 years, 20 years, but, you know, they had split up several times. My sister had gotten married one of the times that Robert was in jail."
At that point defense counsel approached the bench and moved for a mistrial. The trial judge stated the following:
"That should not have been said to the jury, but it was not, the statement was not made by an officer of the court which would give you grounds for the mistrial. If you like I'll instruct the jury they should disregard the remark. The danger you run with that, of course, is that it emphasizes it but I'll do whatever you want. I'm going to deny your motion for a mistrial. I'll do what you want me to do as far as ..."
Defense counsel asked the prosecutor to instruct his witness to refrain from referring to the defendant's prior incarceration and the judge excused the jury in order to allow the prosecutor to do so. Before the jury returned to the courtroom, the trial court asked defense counsel if she wanted the jury admonished to disregard the remark, but counsel refused, indicating that she believed an admonition would call the jury's attention to the remark.
In State v. Mayer, 589 So.2d 1145, 1151 (La.App. 5th Cir.1991), writ denied, 609 So.2d 251 (La.1992), a panel of this court stated:
"A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or court official, during trial or in argument, would require a mistrial on motion of defendant. LSA-C.Cr.P. art. 770(2). However, a state witness is not a court official for purposes of LSA-C.Cr.P. art. 770; therefore, art. 770 does not apply. When the remark is made by someone other *739 than the judge, district attorney, or other court official, such as is the case here, the proper remedy is outlined in LSA-C.Cr.P. art. 771. That article provides that a mistrial is discretionary with the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial."
The jurisprudence reflects that an impermissible reference to another crime, deliberately elicited from a state witness by the prosecutor is imputable to the State and mandates a mistrial. State v. Madison, 345 So.2d 485, 494 (La.1977); State v. Camp, 580 So.2d 957, 959 (La.App. 5th Cir.1991). However, unsolicited and unresponsive testimony is not chargeable against the State to provide a ground for reversal of a conviction. State v. Michel, 422 So.2d 1115, 1118 (La.1982).
La.C.Cr.P. art. 775 provides in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
* * * * * *
(3) There is a legal defect in the proceeding which would make any judgment entered upon a verdict reversible as a matter of law.
* * * * * *
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

* * * * * *
Mistrial is a drastic remedy and unless it is mandated by La.C.Cr.P. art. 770, it is only required where substantial prejudice results to the accused. State v. Comeaux, 514 So.2d 84, 96 (La.1987). The determination of whether such prejudice has resulted lies within the sound discretion of the trial judge. State v. Smith, 430 So.2d 31, 44 (La.1983).
Even assuming that the trial judge misinterpreted his authority to grant a mistrial because he failed to consider C.Cr.P. arts. 771 or 775, the denial of the mistrial was proper because the remark was not so prejudicial as to deprive defendant of a fair trial. The remark was an obscure reference to the defendant being in jail, but it was made without elaboration or explanation. It was also unsolicited and unresponsive to the prosecutor's question. Further, the questions put to the witness by the prosecutor were not overly broad or in such form as to indicate bad faith on the part of the prosecutor. The fact that the verdict was not unanimous does not support the argument either. To conclude that it prejudices the defendant is highly speculative.
In addition, the admission of this "other crimes" evidence was harmless error.[2] Here, the defendant admitted killing the victim but claimed to have acted in "sudden passion" or "heat of blood".[3] The only issue at trial was the defendant's degree of culpability. Therefore, there was no reasonable possibility that the evidence of other crimes might have contributed to the verdict. Therefore, we find that the motion for mistrial was properly denied and the conviction is affirmed.
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
*740 For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capitol case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
The record shows that the trial court failed to give the defendant credit for time served prior to the imposition of his sentence, pursuant to La.C.Cr.P. art. 880. Such an allowance is mandatory. State v. Sherman, 532 So.2d 908 (La.App. 5th Cir. 1988). Consequently, the sentence is amended to give defendant credit for time spent in actual custody prior to the imposition of his sentence.
Accordingly, the conviction of defendant is hereby affirmed. Further, the sentence imposed on defendant is amended to reflect credit for time served. It is otherwise affirmed.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.
NOTES
[1] Defendant filed various motions throughout the proceedings including pro se motions to substitute counsel.
[2] The standard to be used in determining whether the erroneous admission of evidence requires reversal of a defendant's conviction is whether there is a "reasonable" possibility that the evidence might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt that it did not. State v. Walters, 523 So.2d 811, 811 (La.1988).
[3] "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibits a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106, 111 (La.1986), appeal after remand, 501 So.2d 889 (La.App. 5th Cir.1987).