679 So.2d 549 (1996)
STATE of Louisiana, Appellee,
v.
Alvin HARRIS, Appellant.
No. 28517-KA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
*552 Stephens & Stephens by James M. Stephens, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, for Appellee.
Before HIGHTOWER, BROWN and STEWART, JJ.
HIGHTOWER, Judge.
Defendant, Alvin Harris, appeals his conviction and twenty-year hard labor sentence for cocaine distribution, La.R.S. 40:967(A). We affirm.

FACTS
On February 25, 1994, two police officers, Saul Wilson and Betty Pichon, and an unidentified confidential informant ("CI") drove through the streets of Winnsboro as part of an undercover drug operation in Franklin Parish.[1] As the agents' vehicle passed, Harris recognized the CI and yelled for him to stop. Defendant then approached the passenger window of the automobile and began talking with the informant, who identified him to the agents as "Moot" Harris.
Thus engaged in conversation, the CI asked Harris if he knew anyone who had drugs available. When defendant replied that he had crack cocaine for sale at twenty dollars a rock, the CI indicated that Wilson wished to make a purchase. Upon the officer then stating he wanted a "twenty," Harris leaned into the car, handed the undercover agent the illegal substance, and received the appropriate remuneration.
After leaving that location, Wilson handed the crack cocaine to Pichon, who placed it in an envelope showing Harris's alias, the site of the transaction, and a description of the seller. About an hour later, the two undercover agents concluded their operation for the night and transferred the evidence of the "buys" to two Franklin Parish authorities, Johnny Mathews and Larry Crum. At that time, upon being shown a picture of defendant, the visiting officers identified him as the individual who had sold the suspected illegal substance. Laboratory analysis later positively certified the rock-like item to contain cocaine, a schedule II narcotic.
At the conclusion of their almost six-month drug operation, Franklin Parish officials arrested Harris on May 12, 1994, charging him with distribution of cocaine in violation of La.R.S. 40:967(A). Over a year later, a jury unanimously convicted defendant of that crime. This appeal ensued, after the trial judge imposed a sentence of twenty years imprisonment at hard labor.

DISCUSSION

Sufficiency of the Evidence
In his first assignment and without success, Harris challenges the sufficiency of the evidence presented against him.
The criteria for evaluating the sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). That standard, initially enunciated in Jackson and now legislatively embodied within La.C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La. 1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
*553 Of course, it is always the function of a judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied. Where a trier of fact has made a rational determination, an appellate court should not disturb it. Id.; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Thomas, supra. So too, the testimony of a single undercover police officer is sufficient to convict one charged with distribution of drugs. State v. Thompson, 27,543 (La.App. 2d Cir. 12/06/95), 665 So.2d 686; State v. Banks, 627 So.2d 756 (La.App. 2d Cir.1993).
The crime of distribution of cocaine requires the state to prove that the defendant knowingly or intentionally delivered the controlled dangerous substance. La.R.S. 40:967(A)(1); State v. Martin, 595 So.2d 592 (La.1992).
In the present case, defendant challenges only the reliability of the two undercover officers' identification of him as the person who sold the rock of crack cocaine. Essentially, he maintains that law enforcement personnel involved in such extensive drug "buy" operations cannot possibly remember accurately, a year after the transaction, the particular seller involved.
At trial, both officers identified Harris as the person from whom they purchased the crack rock on the night of February 25, 1994. They each testified that they carefully observed the seller and took note of his appearance. Although the transaction occurred around ten o'clock at a location illuminated only by street lights, appellant concluded the sale in close proximity to the agents after leaning into the automobile. The officers further testified that they recognized defendant's picture when, about an hour after the "buy," Crum presented a page of four photographs from a mugshot album and asked, "Is this him?" Earlier testimony by the indicated Franklin Parish official corroborated these events.
Defendant, as stated, later disputed whether the two officers could correctly identify the seller at trial after such a long period and after having made numerous other purchases since the date in question. The record, however, does not support his position. To the contrary, Wilson subsequently saw Harris while buying drugs from other dealers in the area. Likewise, when asked if she identified appellant in court only because of seeing his mugshot again on the day before trial, Pichon responded that she had not forgotten his "large, big eyes," a feature she mentioned to Wilson on the night of the offense. Indeed, upon inspecting the file picture shown to the officers and also defendant's most recent arrest photo, both in evidence, we deem Pichon's observations concerning Harris's facial characteristics to be quite accurate.
Defendant also makes much of the fact that none of the officers noticed a small "teardrop" tattoo just to the side of his right eye. Both undercover agents explained, however, that they could not discern this feature even at trial, observing that it resembled a very small blemish of some type. Likewise, Crum, acquainted with appellant for several years, had never noted the tiny design until specifically pointed out on the day of trial. Nor, after viewing the pictures of Harris, can we disagree with these explanations and characterizations by the law enforcement personnel.
Thus, viewing the record in the light most favorable to the prosecution, a rational juror could find beyond a reasonable doubt that Harris sold crack cocaine to Wilson. Accordingly, this assignment of error fails.

Identity of the Confidential Informant
In the next assignment, Harris argues that the trial court erred in denying his request for the identity of the CI. We again disagree.
Public policy in Louisiana strongly favors protecting the identity of confidential informants. State v. Davis, 411 So.2d 434 (La.1982); State v. Dukes, 609 So.2d 1144 (La.App. 2d Cir.1992), writ denied. The divulgence of such information will be required *554 only where the defense demonstrates exceptional circumstances justifying the disclosure. State v. Weems, 358 So.2d 285 (La.1978); State v. Davis, supra; State v. Dukes, supra. Importantly, the trial court has much discretion in determining whether the defendant sustains that burden. Id.
In the present case, no such exceptional circumstances are shown. The evidence reveals that the informant did nothing more than introduce the undercover officer, who then asked defendant for the cocaine and made the illegal purchase. The CI never handled the money or the drugs. When such a party introduces an agent to the suspect but does not participate in the criminal activity, disclosure is not required. State v. Thompson, supra; State v. Walker, 627 So.2d 785 (La.App. 2d Cir.1993). We thus find no abuse of discretion in the denial of various repeated requests for the CI's identity. Cf. State v. Thompson, supra (informer not participating in purchase involving same undercover officers under almost identical circumstances); State v. Weems, supra (informer did not participate in the crime where, although he gave money to the defendants, they handed the contraband to the law enforcement agent); State v. McGee, 478 So.2d 249 (La.App. 2d Cir.1985) (no disclosure required where informant asked the defendant if he had "speed," but the undercover officer conducted transfer of pills and money).
In like manner, we directly reject defendant's contention that the CI became a material witness merely by supplying the officers with the suspect's street name, "Moot" Harris, which eventually led to the mugshot used for identification purposes. Cf. State v. Banks, supra (where we rebuffed a similar assertion, noting that such an argument confuses knowledge of the defendant's name with the undercover agent's ability to identify, by appearance, the perpetrator of the crime).
Both officers in the present case, like the state trooper in Banks, identified the perpetrator through his appearance and not by virtue of his name. Although their knowledge of the name enabled Crum to present defendant's photo and thus ease the identification process, nothing in the record leads us to believeas defendant suggeststhat Wilson and Pichon simply acquiesced in pronouncing the submitted picture to be that of the seller. Instead, they apparently compared the physical characteristics of the person in the photograph with those of the man they had seen an hour earlier. Consequently, the record discloses no necessity for testimony by the CI about the offender's name and identity. Cf. State v. Banks, supra.

Identification Procedures
In his fourth assignment, Harris maintains that the trial court erred in refusing to exclude evidence of the photographic identification made by the undercover officers shortly after the drug transaction. He contends, but we disagree, that the utilized procedure is impermissibly suggestive and conducive to irreparable mistaken identity.
To suppress an identification, the defendant must prove the procedure involved to be suggestive and that the totality of circumstances presented a substantial likelihood of misidentification. State v. Martin, supra; State v. Davis, 27,961 (La.App. 2d Cir. 04/08/96), 672 So.2d 428. While single photograph identifications should be viewed with general suspicion, their suggestive nature will not per se preclude admissibility unless found to be untrustworthy under the total circumstances. State v. Martin, supra; State v. Harper, 93-2682 (La. 11/30/94), 646 So.2d 338; State v. Dyer, 621 So.2d 51 (La. App.2d Cir.1993), writ denied; State v. McCarter, 577 So.2d 816 (La.App. 2d Cir. 1991). In evaluating whether the reliability of an identification may outweigh the suggestiveness of the employed procedures, the court is directed to look at several factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Harper, *555 supra; State v. Davis, supra at 672 So.2d 428.
In the case at hand, although defendant's picture appeared with three others on a page in the police agency's mugshot book, testimony implies that photo may have been pointed out by the Franklin Parish officer when he asked, "Is that him?" Thus, the procedure appears to be suggestive in that Crum essentially showed Wilson and Pichon a single photograph. Even so, the totality of circumstances does not lead us to conclude that there existed a substantial likelihood of irreparable misidentification.
At trial, both Wilson and Pichon maintained a high level of certainty regarding their identification of Harris. During the contraband transaction, both officers had ample opportunity to view defendant in the illumination from nearby street lamps as he leaned into the car. Also, their training and experience in controlled drug purchases commanded special attentiveness on their part. Cf. State v. McCarter, supra. Pichon, in order to verify her identification, specifically noted the distinct eyes of the seller. Wilson saw defendant on several subsequent occasions during the undercover operation. As for the agents' failure to notice the previously mentioned teardrop tattoo, this small feature understandably could be overlooked and is not even visible on the identification photograph.
Equally important, the identification in question took place a mere hour after the officers concluded their exchange with defendant. That period is much shorter than that approved in State v. Thompson, supra, where under similar circumstances one of these same undercover agents viewed the identifying picture "a week or two" after the illegal transaction. We thus find the present photographic identification, even if suggestive, to be trustworthy under the circumstances shown. Cf. State v. Harper, supra; State v. Thompson, supra; State v. McCarter, supra.

Other Crimes Evidence
In a supplemental assignment of error, Harris argues that the trial court erred in refusing to declare a mistrial when Wilson's testimony improperly referred to prior crimes by defendant. This complaint, too, lacks merit.
When the prosecutor asked whether the seller had "handed the cocaine directly to [him]," Wilson noted that during that illicit exchange Harris said, "Man, you ain't the police, huh, because I been in trouble before and I sure don't want to go back. I hope you're not the police." Although denying a later mistrial request asserting that the witness's response referred to prior crimes committed by appellant, the trial court sustained an original objection that effectively barred any similar testimony.
Mistrial, a drastic remedy, is warranted only when substantial prejudice would otherwise result to the accused. State v. Edwards, 420 So.2d 663 (La.1982); State v. Jackson, 629 So.2d 1374 (La.App. 2d Cir. 1993), writ denied. Further, a policeman is not a "court official" under LSA-C.Cr.P. Art. 770. State v. Watson, 449 So.2d 1321 (La. 1984), cert. denied; State v. Coutee, 545 So.2d 571 (La.App. 2d Cir.1989), writ denied. Thus, a mistrial is not required absent the showing of a pattern of unresponsive answers or improper intent by such an officer. State v. Powell, 598 So.2d 454 (La.App. 2d Cir. 1992), writ denied; State v. Coutee, supra; State v. Merrick, 598 So.2d 1184 (La.App. 4th Cir.1992), writ denied. Instead, the proper remedy for inappropriate remarks by a law enforcement agent is an admonishment directing the jury to disregard the remark. La.C.Cr.P. Art. 771; State v. Watson, supra; State v. Coutee, supra.
In the present case, even though asked simply whether the illegal substance had been handed directly to him, Wilson unresponsively set forth greater detail about the transaction. Basically, he repeated a statement by Harris but gave no specifics about prior criminal activities, intimating only that defendant had been "in trouble" and probably spent time in prison.
Generally, such unsolicited and unresponsive testimony is not chargeable against the state as grounds for reversing a conviction. State v. Ducote, 614 So.2d 735 *556 (La.App. 5th Cir.1993); see also State v. Powell, supra. Nor do vague, non-pointed statements constitute other crimes evidence. See State v. Hall, 549 So.2d 373 (La.App. 2d Cir.1989), writ denied; State v. Colbert, 615 So.2d 32 (La.App. 3d Cir.1993). In fact, even when the district attorney should anticipate potentially prejudicial remarks of this nature, the necessity for a mistrial is left in the sound discretion of the trial court. State v. Douglas, 389 So.2d 1263 (La.1980), and authorities therein; State v. Merrick, supra.
Consequently, with these principles in mind, we do not discern a manifest abuse of discretion warranting the substitution of our judgment for that of the trial judge who conducted the trial, heard the remark, and stood in the best position to assess its impact. Cf. State v. Russell, 416 So.2d 1283 (La.1982), cert. denied (witness related the defendant's telephone threat that "I've been to prison before ... there are others who will take care of you"); State v. Douglas, supra (policeman stated that he looked for defendant in the area because he "had recently been released from Angola"); State v. Powell, supra (officer's comment linked a photograph of defendant to an "arrest record"); State v. Ducote, supra (witness stated that victim had been separated from defendant "one of the times that [he] was in jail"). In lieu of a mistrial, Harris's attorney should have alternatively sought an admonishment for the jury to disregard the statement.
What is more, the mere mentioning of another crime will not trigger La. C.Cr.P. Art. 770, but, instead, the reference must be to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Merrick, supra. The statement by Harris, having been made in the middle of the drug transaction, easily qualifies as part of the res gestae. Such a declaration, when introduced through the testimony of witnesses and police officers as to what they heard and observed before, during, or after the crime, constitutes an integral part of that act or transaction and comes within the broad ambit of Louisiana's res gestae doctrine. See La.C.E. Art. 404(B)(1); State v. Thompson, supra; State v. Hall, supra; State v. Johnson, 440 So.2d 838 (La.App. 2d Cir.1983). That being so, additional reasons warrant the rejection of appellant's complaint regarding his statement.

Excessive Sentence
Although defendant's third assignment of error contends that his term of imprisonment is excessive, the record does not contained a motion to reconsider sentence as demanded by La.C.Cr.P. Art. 881.1. That article precludes "the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion...." Here, failing to comply with that provision following his sentencing, Harris is barred from presenting a claim of excessiveness. See State v. Robinson, 27,225 (La.App. 2d Cir. 09/27/95), 661 So.2d 527; State v. Scott, 27,104 (La.App. 2d Cir. 06/21/95), 658 So.2d 251; State v. Jackson, supra.[2]

Error PatentCredit for Time Served
Despite indicating that Harris had been incarcerated from the date of arrest until his release without bond in June 1995, the minutes fail to reveal any credit granted for time served. The provisions of La. C.Cr.P. Art. 880 require that the trial judge thus ascribe such periods in actual custody, and failure to do so constitutes error patent. State v. Coleman, 605 So.2d 231 (La.App. 2d Cir.1992); State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), writ denied; State v. Allen, 571 So.2d 758 (La.App. 2d Cir.1990). Accordingly, the sentence will be amended to reflect any time in actual custody, as a result of this offense, which has not been calculated against any other term of incarceration. Cf. *557 State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied.

CONCLUSION
For these reasons, we affirm both the conviction and sentence, after amendment as indicated.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED.
NOTES
[1] Wilson and Pichon, regularly employed by the Beauregard Parish police department, had been working on loan to Franklin Parish authorities as undercover agents in an ongoing drug "buy" operation.
[2] Even considering appellant's claim of constitutional excessiveness, we find no error. This twenty-year hard labor sentence is appropriate for a thirty-four-year-old third felony offender with an extensive criminal record dating back to 1979 and including two convictions for distribution of controlled dangerous substances. For a discussion of the parameters applied in that determination, see La. Const. Art. I, § 20; State v. Lobato, 603 So.2d 739 (La.1992); State v. Barberousse, 480 So.2d 273 (La.1985); State v. Square, 433 So.2d 104 (La.1983); State v. Bonanno, 384 So.2d 355 (La.1980).