770 So.2d 13 (2000)
STATE of Louisiana
v.
Willie DILLION a/k/a Willie Morrison.
No. 99-KA-2175.
Court of Appeal of Louisiana, Fourth Circuit.
September 6, 2000.
*15 Harry F. Connick, District Attorney, Jane Louise Beebe, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Christopher Albert Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Counsel for Defendant/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY.
KIRBY, J.

STATEMENT OF CASE
Willie Dillion, a/k/a Willie Morrison, was charged on February 8, 1999 by bill of information with molestation of a juvenile, *16 a violation of La. R.S. 14:81.2. At his arraignment on February 12, 1999, he pled not guilty. On April 1, 1999, a six-member jury found him guilty as charged. On June 15, 1999, he was sentenced to ten years at hard labor, and the State filed a multiple bill of information. On June 17, 1999, the court adjudged the defendant a third felony offender, and vacated and set aside the original sentence, and sentenced the defendant to life imprisonment at hard labor, with credit for time served.

STATEMENT OF FACT
Officer Micheleen Scott testified that on November 25, 1998, she investigated a complaint of molestation of a juvenile. She spoke with the victim, D. M.[1], and her mother, and because of those conversations decided to have the child transported to the hospital. Officer Scott further testified that her investigation culminated in the defendant's arrest.
Cynthia Caron, a nurse in the pediatric emergency room at University Hospital, testified that she is assigned to triage patients. When the victim arrived at the hospital, Ms. Caron received information from the police that the child was brought in to rule out sexual abuse.
G. M., the victim's mother, testified that the defendant is her ex-husband and the father of two of her three children. The defendant is not the father of the victim. Ms. M. explained that she works nights and that the defendant took care of the children while she was at work. On November 25, 1998, the victim told her that the defendant touched her "private part", and then demonstrated what the defendant did to her. The victim straddled her and, without touching her mother, indicated that the defendant touched her as if cleaning her, and then put his finger to her nose and said "cheesy, huh?" Ms. Massey explained that the victim had a bed-wetting problem, but that if she did have an accident, the victim was taught to clean herself. Ms. Massey did not request, nor authorize the defendant, to clean the victim.
D. M., the victim, testified that she is in the third grade. The defendant is not her father, but she refers to him as "Dad". She stated that the first time the defendant touched her, she had wet herself and he cleaned her off. The second time, she fell asleep downstairs and the defendant took her upstairs and put her in her mother's bed. She had not wet herself but the defendant removed her clothes and proceeded to clean her with a towel. He then held the towel to her nose and said "cheesy, huh?" While she testified, she demonstrated the defendant's actions using a doll. After the incident was over, she went downstairs to her brother. Later, while at her uncle's house, she told her mother what the defendant did. She stated that she spoke to the police, and went to the hospital to be checked for infection. She was hurting because the defendant "stuck the towel deep down" in her private part.
W. M., the victim's brother, testified that the defendant was his father. He remembered the night the defendant did something to his sister. She came downstairs wearing only a T-shirt and her underpants. She was nervous, and shaking with her legs closed. He knew something was wrong and tried to call his mother at work, but the line was busy. He and the victim slept together that night so he could protect her because he "thought [the defendant] was gonna do something else to her, like do the same thing again."

ERRORS PATENT
A review for errors patent on the face of the record reveals one. The defendant was adjudged a third felony offender pursuant to La. R.S. 15:529.1, and sentenced to life imprisonment at hard labor with credit for time served. La. R.S. *17 15:529.1(G) mandates that a sentence imposed under the Habitual Offender Law be served without benefit of parole, probation or suspension of sentence. By failing to restrict the defendant's sentence with denial of benefits, the court rendered an illegally lenient sentence. However, this court will not correct an error patent favorable to the defendant on appeal where not argued by the State or the defense. State v. Fraser, 484 So.2d 122 (La.1986).

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error the defendant contends that the evidence is insufficient to support the conviction because the State failed to prove intent to arouse.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir. 1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Molestation of a juvenile is defined by La. R.S. 14:81.2 as:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
In State v. Ragas, 92-0342 (La.App. 4th Cir.10/29/92), 607 So.2d 967, writ denied 92-3069 (La.2/11/93), 612 So.2d 97 this court examined what constituted a lewd and lascivious act:
...the defendant pulled the victim on top of him while lying in bed, hugged and kissed her and touched her breasts and buttocks. We conclude that a rational trier of fact could have found that the defendant's behavior justified a finding of a lewd and lascivious act. 607 So.2d at 972.
As for intent to arouse, Ragas determined:
With regard to the element of intent to arouse or gratify sexual desires, the State does not have to prove actual *18 arousal; it need only prove intent to arouse. State v. Rollins, [90-1414 (La. App. 4th Cir.5/30/91), 581 So.2d 379]. Although the victim and the defendant were fully clothed, the defendant's touching of the victim's breasts and buttocks while hugging and kissing her clearly constituted inappropriate body contact. Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the defendant had the intent to arouse or gratify his or the victim's sexual desires. 607 So.2d at 972-973.
The defendant in this case argues that his actions may be regarded as crude and repugnant, but not as specifically intended to arouse his or his victim's sexual desire.
The defendant's argument is not persuasive. There was inappropriate and offensive body contact between the defendant and the victim. He placed the victim on her mother's, his ex-wife's, bed, removed her clothing and, in the victim's words, hurt her because "he was sticking the towel deep down in her private part." Any rational trier of fact could conclude beyond a reasonable doubt that the defendant's actions were intended to arouse his sexual desire. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In this assignment, the defendant assigns error to the trial court's failure to grant the defendant's motion for mistrial.
After establishing how Officer Scott obtained a warrant for the defendant's arrest, the following line of questioning ensued:
Q. And did you have occasion to arrest or book Mr. Dillion?
A. Yes, I did.
Q. And when and where did that take place?
A. Okay, it took place on the 14th of December. Mr. Morrison was already in jail on a parole violation.
The defendant contends that Officer Scott's response unfairly prejudiced him by referring to "other criminal acts" committed by him, and that he was therefore entitled to a mistrial under La. C.Cr .P. art. 770.
A mistrial is warranted under La. C.Cr.P. art. 770 when certain remarks are considered so prejudicial and potentially damaging to a defendant's rights that even jury admonition could not provide a cure. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Potentially damaging remarks include reference to race or religion, when not material or relevant to the case, and direct or indirect reference to another crime committed or alleged to be committed by the defendant, unless that evidence is otherwise admissible. La. C.Cr .P. art. 770. The comment must be within earshot of the jury and must be made by a judge, district attorney, or other court official. Id. Comments must be viewed in light of the context in which they are made. State v. Webb, 419 So.2d 436, 440 (La.1982). Moreover, a comment must not "arguably" point to a prior crime. To trigger mandatory mistrial pursuant to Article 770(2), the remark must "unmistakably" point to evidence of another crime. State v. Babin, 336 So.2d 780 (La.1976) (where reference to a "mug shot" was not unmistakable reference to a crime committed by defendant); State v. Harris, 258 La. 720, 247 So.2d 847 (1971) (where no crime was evidenced by a police officer's reference to obtaining defendant's photograph from the Bureau of Investigation). In addition, the imputation must "unambiguously" point to defendant. State v. Edwards, 406 So.2d 1331, 1349 (La.1981), cert. denied sub nom. Edwards v. La., 456 U.S. 945, 102 S.Ct. 2011 C.Cr.P. art. 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). La. C.Cr.P. art. 770 mandates a mistrial only if the reference to "other crimes" is made by the judge, district attorney or court official. A policeman is not a "court *19 official" for purposes of C.Cr.P. art. 770. State v. Harper, 430 So.2d 627 (La.1983).
Alternatively, the defendant argues that mistrial is mandated under La. C.Cr.P. arts. 771 and 775.
La. C.Cr.P. art. 771 provides in part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
An admonishment under C.Cr.P. art. 771 is not necessary unless the remark constitutes an unambiguous reference to another crime. State v. Hayes, 414 So.2d 717 (La.1982).
In this case, after defense counsel objected the Officer Scott's remarks, the following exchange, out of the presence of the jury, occurred between the judge, defense counsel and prosecutor:
THE COURT:
..., what are you going into all this for? He's arrested, he's here, I don't need to hear all that stuff. He's here. There's no question that she arrested him. We know what he's arrest for. Why you gotta go into all that stuff? That's how you cause problems in these darn cases.
PROSECUTOR:
Your Honor, I didn't ask the witness why was he arrested.
THE COURT:
It doesn't matter
DEFENSE COUNSEL:
Especiallyespecially in this instance
THE COURT:
 you don't talk about anybody being in jail in front of a jury. That's why we have a jury trial. They're not supposed to know anything about his background. Nothing at all.
DEFENSE COUNSEL:
Especially in this
THE COURT:
With great reluctance, with great reluctance, [defense counsel], deny your motion for mistrial.
DEFENSE COUNSEL:
Yes, sir.
THE COURT:
This, of course, has been held not to be a court official or a court officer. Case law has held that. Do you want an admonition? You tell me what you want me to tell them, I'll do it.
DEFENSE COUNSEL:
No, an admonition is just gonna stress and emphasize it. I'm just gonna file my objection. Whether she's a court officer or not, I'm just talking about the fairness of these proceedings. This is especially a case where you're going to have credibility and an issue and about whether this child is credible or whether he's discredible and he's already been discredited at this point. God knows what the people think he was arrested for prior to this. Parole. They knowI got a court reporter on the jury from federal court. I mean, he's gonna know parole means he's got a prior conviction. I'm sure the other people
THE COURT:
Do you want an admonition?
DEFENSE COUNSEL:
No, admonition's not gonna do any good. You can't unring a bell. The bell's been rung. I make an objection.
*20 The standard to judge whether a trial court should grant a mistrial is whether the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of fair trial. State v. Johnson, 94-1172, (La. App. 4th Cir.12/15/94), 648 So.2d 43, 44, citing State v. Smith, 433 So.2d 688, 696 (La.1983). A trial court has discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to ensure a fair trial when there are no specific statutory grounds for a mandatory mistrial, and the trial court's ruling will not be disturbed on review absent an abuse of discretion. State v. Lewis, 95-0412, (La.App. 4th Cir.9/28/95), 662 So.2d 77, 79, writ denied, 95-2625 (La.2/2/96), 666 So.2d 1088. In this case, the prosecution improvidently sought testimony from Officer Scott concerning the defendant's imprisonment for parole violation; thus the error is imputable to the State. State v. Madison, 345 So.2d 485 (La.1977); State v. Merrick, 598 So.2d 1184 (La.App. 4th Cir.), writ denied 608 So.2d 166 (La.1992). The evidence was inadmissible and a violation of art. 770(2). However, violations of art. 770 are subject to a harmless error analysis when a trial error which occurred during the case's presentation is involved because the error can be quantitatively assessed in the context of the other evidence. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. In this case, the victim's testimony was unrefuted by any other witness. Moreover, she recounted the facts of the molestation the day after the event to her mother in the same manner she presented to the facts to the jury, and her brother corroborated her testimony. Therefore, although the evidence of the defendant's prior incarceration was erroneously introduced, the error was harmless in light of the victim's testimony. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
In a third assignment of error, the defendant complains his sentence is excessive.
Constitutional excessiveness is reviewed by appellate courts under La. Const. Art. 1, § 20. A sentence that is constitutionally excessive makes no measurable contribution to acceptable goals of punishment, is the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. Courts have the power to declare a sentence excessive even if it falls within the statutory limits. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial court has the authority to reduce a mandatory minimum sentence provided by the multiple offender statute for a particular offense and offender if the sentence would be constitutionally excessive. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. Because the Habitual Offender Law has been held constitutional, the minimum sentences it imposes upon multiple offenders are presumed constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. To rebut the presumption of constitutionality, the defendant must show by clear and convincing evidence that he is exceptional in that, because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, 531, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
Under the Habitual Offender Law, a defendant with more than one felony conviction is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the law. Such a multiple offender is subjected to a longer sentence because he continues to break the law. "[I]t is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular *21 defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution." State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677. If the trial court finds clear and convincing evidence that justifies a reduction of the minimum enhanced sentence, it must articulate reasons why the sentence imposed (instead of the statutory minimum) is the longest sentence not constitutionally excessive. Id.
In this case, defendant was thirty years old at the time he was sentenced. He pled guilty in December 1991 to distribution of cocaine, and was sentenced to five years at hard labor and three years active probation with conditions. Less than six months later, in May 1992, while on parole from the distribution of cocaine conviction, the defendant was arrested for aggravated rape. He pled guilty in November 1992, to sexual battery, his parole was revoked, and he was sentenced to five years at hard labor. Shortly, after his release from incarceration on the sexual battery conviction, he was arrested in November, 1998, for the instant offense
La. R.S. 15:529.1(A)(b)(ii) provides that if the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years, or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence.
The defendant in this case has a 1991 conviction for distribution of cocaine, La. R.S. 40:967, a violation of the Uniform Controlled Dangerous Substance Law and a 1992 conviction for sexual battery, a crime of violence under La. R.S. 14:2(13)(1). Moreover, the defendant presented no evidence during the habitual offender sentencing hearing to rebut the presumption of constitutionality. This assignment has no merit.
CONCLUSION
For the aforementioned reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Due to the nature of the case, the victim and her family will be referred to only by their initials. The victim is referred to as "D. M.", her mother as "G. M.", and her brother as "W. M.".