824 So.2d 1240 (2002)
STATE of Louisiana
v.
Robert E. JUARBE.
No. 2001-KA-2250.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 2002.
*1243 Harry F. Connick, District Attorney, Juliet Clark, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
*1244 (Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR.).
MICHAEL E. KIRBY, Judge.

STATEMENT OF CASE
On May 12, 1994, Robert Juarbe ("Juarbe") was charged by grand jury indictment with violation of La. R.S. 14.30 for the first-degree murder of Harrell Clark (victim or "Clark"), a driver for United Cab. Juarbe had been charged with three other defendants, but the cases were severed on August 18, 1994. On May 17, 1994, Juarbe entered a plea of not guilty, and on August 18, 1994, the trial court denied his motion to suppress evidence. After a three-day trial on October 24-26, 1994, a twelve-member jury found Juarbe guilty of second-degree murder. On November 16, 1994, Juarbe was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. An appeal was taken on appellant's behalf, an errors patent brief was filed, and his conviction and sentence were affirmed. State v. Juarbe, unpub., 95-0395 (La.App. 4 Cir. 10/12/95, 660 So.2d 1223). On May 25, 1999, Juarbe was granted an out of time appeal because his original appeal was found to be inadequate pursuant to State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. State v. Juarbe, 99-1025 (La. 4 Cir. 05/25/99). In this appeal counsel for appellant asserts one assignment of error. In a pro se brief appellant himself asserts five additional assignments.

STATEMENT OF FACT
The following statement of facts is taken from this Court's unpublished opinion in State v. Juarbe, unpub., 95-0395, p. 2-5 (La.App. 4 Cir. 10/12/95), 660 So.2d 1223. Todd Bauer, a news anchor for WWL Radio, testified that he was driving to work at about 4:00 a.m. on April 1, 1994 when a young woman stepped into the street in the 2400 block of Canal Street waving her arms at him. He slowed down, but after he noticed a man standing behind her, he drove away. Later that morning, Bauer called the police for news items and learned of a murder in that block. He then told the police about seeing the woman in the street.
Willie Bonney, a security officer for the Majik Market, testified that he was working at about 3:00 a.m. on April 1, 1994 in the 2400 block of Canal Street when he noticed a United Taxi Cab parked across the street. He saw a man and woman exit the rear of the cab and enter a small car that had stopped on a side street. After the couple got into the small car, where two males were waiting, the car made a U-turn on Canal Street and headed up the side street. Shortly after, Bonney and a fellow officer went across the street to look into the taxicab. They saw that the cab driver had been shot.
On April 1, 1994, NOPD Officer Marco Demma, Jr., responding to a report of homicide, arrived at 2322 Canal Street, where he found a taxi parked at the curb. The driver, Clark, had been shot in the back of the head. A canister on the front seat had been overturned and the contents strewn across the street. The officer found a nine-millimeter casing on the floor of the rear passenger seat.
Sergeant Paul Schnyder of the St. John Parish Sheriffs Office testified that on April 3, 1994, Michael Buffington ("Buffington") came to the sheriffs office with his two daughters, sixteen year old Misty Buffington ("Misty") and fourteen year old Michelle Buffington ("Michelle"). After speaking with Buffington, the sergeant called the New Orleans homicide office concerning the death of Harold Clark. Juarbe, Daniel Chambers ("Chambers"), and Reginald Mason ("Mason") were arrested. *1245 A receipt for a nine-millimeter Smith & Wesson weapon was found at the home of Chambers. The weapon had been purchased on February 25, 1994.
On April 3, 1994, Officer Demma interviewed Misty, Michelle, and Buffington. He recorded the statements of the three on videotape, arrested Misty and Michelle, and prepared arrest warrants for Juarbe and the two other men. After arresting Juarbe, Officer Demma recorded a videotape statement from him also. A search of Juarbe's home revealed a suitcase containing the shoes, slacks, shirt, and jacket that he wore on the night of March 31, 1994.
Dr. William Newman, III, the pathologist who performed the autopsy on the victim, testified that Clark died from a gunshot wound behind the right ear. The stippling on the skin and the fragmented bullet recovered suggested that the gun was only two or three feet away from the victim when it was fired.
Michelle testified that she pleaded guilty in juvenile court to being an accessory after the fact to murder. She said that she had dated Juarbe and described being at a movie theater in LaPlace on March 31, 1994 where she and her sister Misty saw Juarbe who invited them to ride around with him. Chambers and Mason were also in the car. Juarbe drove the group to the French Quarter where they entered two nightclubs. Two hours later, when they were leaving the French Quarter, Juarbe and Chambers began talking of killing a cab driver. They parked, and Misty and Chambers left the car to flag down a taxi. Michelle said that the couple planned to rob the driver. When Misty and Chambers were unable to flag a cab, they returned to the car. At that point, Juarbe exited the car, and he and Misty went to the street where they successfully stopped a taxi. Michelle testified that she saw a gun in Juarbe's hand as he walked toward the taxi. The group in Juarbe's car followed the taxi after Juarbe and Misty entered the cab and drove away. The taxicab then pulled over to the side, and Michelle said that Chambers commented then that "Rob [Juarbe] had killed him." Chambers, who was now driving, stopped to pick up Juarbe and Misty. Michelle testified that when Misty and Juarbe got in the car, Misty had blood on her hands and Juarbe stated that he "blasted the driver." Misty had searched the cab driver's pockets but had not found any money. The group returned to LaPlace where everyone was dropped off around 6:00 a.m.
Officer Wayne Schafer of the St. John the Baptist Sheriff's Office testified that on April 4, 1994, he searched Juarbe's home. The officer was looking for clothes Juarbe wore the night of the murder. The officer found the white and yellow check pants and jacket as well as the white shirt. None of the items was blood stained.
Melinda Juarbe, Juarbe's wife, testified that her husband attended Phillips Junior College and worked as a security guard prior to his arrest. Mrs. Juarbe said that she did not know Misty, Michelle, Chambers, or Mason. Mrs. Juarbe remembered that her husband came home between 4:00 and 5:00 a.m. on the morning of April 1, 1994 and that he threw his clothes on the floor as he always did.

ERRORS PATENT
A review of the record for error patent has revealed none.

DISCUSSION

COUNSEL'S ASSIGNMENT OF ERROR NUMBER 1
Juarbe argues that a mistrial should have been granted based on La. C. Cr. P. *1246 art. 770.[1] The state, however, contends that the motion was inappropriate under La. C. Cr. P. art. 770, as this article governs situations where the person making the remark is the judge, district attorney, or a court official. As Michelle, a witness, made the comment, the state argues that the motion for mistrial should have been made under La. C. Cr. P. art. 775.[2] Nevertheless, the state argues that even under the appropriate rule, the motion would have been without merit. The applicability of articles 770, 771,[3] and 775 will be addressed in turn.
Juarbe argues that based on La. C. Cr. P. art. 770, a mistrial should have been granted when the following exchange took place on direct examination of Michelle by Assistant District Attorney Glenn Woods:
Q: After leaving the French Quarter, where did you go?
A: We went driving down the street. I had thought that we were on our way home, but Daniel [Chambers] and Rob [Juarbe] were in the front seat talking about going to kill a cab driver. When they had parked, that's when Daniel and my sister had gotten out of the car and went to try to flag down a cab.
Q: Was there any discussion of a robbery?
A: No, not at that time.
Q: Was there ever any type of discussion of a robbery?
A: Yes, there was when we first arrived in New Orleans.
By Mr. Smith [attorney for Juarbe]:
Your Honor, I'm going to object.... My motion is for a mistrial for making reference to the robbery which does not involve the cab driver which is the focus of this particular charge. The robbery that she is making reference to is the robbery they discussed when they first got to the French Quarter. She certainly made reference to another crime other than the murder
*1247 The trial court denied the motion, finding that there was no indication that the jury would necessarily interpret the exchange as evidence of other crimes being committed and that the jury was more likely under the impression that there were other crimes discussed. The trial court also dismissed the possibility of admonishing the jury because that would "enlighten them that there were other robberies discussed." Juarbe agreed that an admonition would not solve the problem. Additionally, Juarbe rejected the possibility of Smith cross examining Michelle on the robbery issue to clarify that it was Chambers, not Juarbe, who discussed committing robberies when they arrived in the French Quarter.
Generally, evidence of other crimes, wrongs or acts is inadmissible, with the exception under La. C.E. article 404(B)(1) for admission of evidence of other crimes "... when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." State v. Burton, 98-0096 pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74, 78-79. Evidence of other crimes is admissible when it is related to and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Parker, 96-1852 (La.App. 4 Cir. 6/18/97), 696 So.2d 599; State v. Brewington, 601 So.2d 656 (La. 1992). It does not appear that the group's discussion of possible robberies is intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it, and the inappropriate use of other crimes evidence in a trial renders the proceeding subject to mistrial.
The Louisiana Supreme Court recently reiterated the standard for reviewing motions for mistrial:
Mistrial is a drastic remedy and is warranted under La.Code Crim. Proc. art. 770 only when a remark or comment referencing an accused's commission of other crimes results in prejudice to his substantial rights sufficient to undermine the fairness of trial. Assessing prejudice and deciding whether to grant or deny a mistrial lies in the sound discretion of the trial court. State v. Connolly, 96-1680, p. 23 (La.7/1/97), 700 So.2d 810, 824. Even though Article 770(2) is couched in mandatory terms (a "mistrial shall be ordered ...."), the admission of other crimes evidence is subject to harmless error analysis. State v. Johnson, 94-1379, pp. 16-17 (La.11/27/95), 664 So.2d 94, 101-02.
State v. Broaden, 99-21 (La.2/22/01), 780 So.2d 349, 367.
Juarbe argues that mistrial was the only remedy for the exchange between the district attorney and Michelle regarding the other possible crime of robbery being discussed. It appears that because the district attorney asked Michelle a direct question about other crimes, the remark by the witness about other crimes being discussed can be imputed to the state. State v. Dillion, 99-2175, p. 10 (La. App. 4 Cir.2000), 770 So.2d 13, 20 (citing State v. Madison, 345 So.2d 485 (La.1977) and State v. Merrick, 598 So.2d 1184 (La. App. 4 Cir.1992)). Therefore, it appears that the motion for mistrial was appropriately made under La. C. Cr. P. art. 770
The failure to grant a mistrial warranted under La C.Cr.P. art. 770 is subject to harmless error review:
The test used in deciding if a trial error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 *1248 L.Ed.2d 705 (1967). The Chapman standard was later refined in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), as follows: Consistent with the jury-trial guarantee, the question [Chapman ] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
State v. Dangerfield, 2000-2359 (La.App. 4 Cir. 4/3/02), 816 So.2d 885, 895. While the question should not have been asked as it was, and the answer should not have been admitted, it does not appear that the trial court erred when it denied Juarbe's motion for a mistrial. Taken in totality with all other evidence, the comments did not likely contribute to the verdict. The trial court offered to admonish the jury, but Juarbe declined the trial court's offer. Moreover, these statements do not warrant reversal of Juarbe's conviction, as the testimony overwhelmingly established his involvement in the shooting. Michelle testified that she observed Juarbe approach the taxicab with a gun, that the group followed as Misty and Juarbe rode in the taxicab, and that upon reentering the vehicle, Misty had blood on her hands and Juarbe commented that he "blasted the cab driver." The evidence of Juarbe's guilt was overwhelming and the statements concerning other crimes did not contribute to the jury's verdict. Any error was harmless.
Similarly, Juarbe is not entitled to relief under La.C.Cr.P. art. 775. Under La.C.Cr.P. art. 775, "[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771." La. C. Cr. P. art. 775. The trial court's ruling on whether to grant a mistrial for a comment by a police officer referring to other crimes evidence should not be disturbed absent a clear abuse of discretion, and errors are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict. State v. Nicholson, 96-2110 (La. App. 4 Cir. 11/26/97), 703 So.2d 173, 180 (citing State v. Manuel, 94-0087, 94-0088 (La.App. 4 Cir. 11/30/94), 646 So.2d 489). It does not appear that the trial court abused its discretion in denying a motion for mistrial under the circumstances, as there is no indication in the record that Juarbe suffered prejudice or that he could not receive a fair trial as result of the brief exchange regarding possible robbery plans.
Likewise, the analysis under article 771 yields a similar result. When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, and that evidence is not admissible, the defendant's remedy is a request for an admonition or a mistrial. La.C.Cr.P. art. 771. The remark or comment, however, must constitute an unambiguous reference to other crimes. State v. Lewis, 95-0769, p. 7 (La. App. 4 Cir. 1/10/97), 687 So.2d 1056. Upon motion of the defendant, the court may, in its discretion, grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial. Id. In the instant case, the questioning by the district attorney and the answer by Michelle were not an unambiguous reference *1249 to Juarbe discussing plans for a robbery. The attorneys and the trial judge discussed the possibility of admonishing the jury, but Juarbe declined. The trial court acted within its discretion in denying the motion for mistrial after the parties decided an admonition would only call attention to the possibility of other crimes, and the other crimes evidence was not attributable specifically to Juarbe. Therefore, the trial court did not err in denying Defendant's motion for mistrial under the requisite analysis for La.C.Cr.P. art. 771.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In this pro se assignment Defendant asserts that the trial court erred in denying his Motion to Quash Indictment because the selection of grand jury fore-persons between 1980 and 1994 violated the Fourteenth Amendment's Equal Protection Clause of the U.S. Constitution. A motion to quash indictment is a prerequisite to challenging the selection of a grand jury foreperson. State v. Woodberry, XXXX-XXXX (La.App. 4 Cir. 6/5/02), 820 So.2d 638, 642. Defendant filed a Motion to Quash Indictment on July 1, 1994) and the trial court denied the motion at a hearing on July 18, 1994. The motion, however, did not raise this particular issue, and Defendant is barred from now raising it. Deloch v. Whitley, 96-1901, p. 1 (La.11/22/96), 684 So.2d 349. See also State v. Brooks, 98-0693, p. 9 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 819 (a defendant must make known the grounds for his objection, and he is limited on appeal to those grounds articulated at trial). Defendant may urge this alleged error in an application for post conviction relief.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
Juarbe argues that he has been deprived of the right to a complete trial record on appeal due to the trial court reporter's failure to record bench conferences. The Louisiana Supreme Court recently reviewed the issue of unrecorded bench conferences and the sufficiency of the record for appellate review:
This court has never articulated a per se rule either requiring the recording of bench conferences or exempting them from the scope of La.Code Crim. Proc. art. 843. Still, art. 843's description of "objections" and "arguments" will normally apply only to objections made in open court and the arguments of counsel in closing, because only these objections and arguments rise to a level of materiality sufficient to invoke art. 843. Similarly, Art. I, § 19's command to record "evidence" does not encompass bench conferences, at least, not ones that do not satisfy the materiality requirements of La.Code Crim. Proc. art. 843.
State v. Hoffman, 98-3118, p. 49 (La.4/11/00), 768 So.2d 542, 586; see State v. Deruise, 98-0541, p. 9-10 (La.4/3/01), 802 So.2d 1224, cert. denied, Deruise v. Louisiana, ___ U.S. ___, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). The Supreme Court in Hoffman went on to explain when reversal is mandated for failure to record bench conferences:
Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal. See State v. Robinson, 387 So.2d 1143 (La.1980) (reversal required when record failed to contain the testimony of a State and defense expert witness); State v. Ford, 338 So.2d 107 (La.1976) (reversal required when record missing the testimony of four State witnesses and the voir dire of prospective jurors). On the other hand, inconsequential omissions or slight inaccuracies do not require reversal. State v. Goodbier, 367 *1250 So.2d 356, 357 (La.1979) (reversal not required when record does not include a transcript of the voir dire examination and affidavit of court reporter indicated that counsel made no objections during voir dire).
Hoffman, 98-3118, p. 49-50, 768 So.2d at 586.
Juarbe points to seventeen bench conferences that occurred off-the-record. From the context of the trial transcript, these bench conferences primarily involved minor evidentiary rulings and logistical and scheduling matters. In addition, Juarbe has not demonstrated any specific prejudice suffered as a result of the bench conferences not being transcribed, and nothing in the record suggests that the conferences had a discernible impact on the proceedings. State v. Deruise, 98-0541, p. 15 (La.4/3/01), 802 So.2d at 1236-1237. This assignment does not have merit.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
Juarbe next argues that his indictment was defective because it failed to allege the essential elements of the charged offense of first-degree murder. The original indictment referenced La. R.S. 14:30 and read "first degree murder of Harrell Clark".[4] The indictment in the present case follows the short form set forth in La.C.Cr.P. art. 465(A)(31) for a charge of first degree murder. The use of short form indictments is constitutionally valid. State v. Coldman, 99-2216, p. 10 (La.App. 4 Cir. 8/30/00), 769 So.2d 131, 137, writ denied, 2000-2733 (La.9/14/01), 796 So.2d 673; State v. Cager, 97-1877, p. 13 (La.App. 4 Cir. 3/24/99), 732 So.2d 97, 105, citing State v. Bourque, 622 So.2d 198 (La.1993). In addition, Juarbe filed a motion for a bill of particulars and asked the state to specify which statute, part, and subsection the prosecution was based. The state responded that the prosecution was based on La. R.S. 14:30(A)(1). This particular provision states that first degree murder is the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm and is engaged in any of several enumerated crimes, including armed robbery. Thus, the indictment was not defective, and defendant was adequately informed of the nature of the charge against him prior to trial. Consequently, this assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
Juarbe argues that the trial court's instruction to the jury on the law of principals was constitutionally infirm because it did not make clear that the jury had to find that this defendant had the specific intent to kill. Although defense counsel expressed some hesitation regarding the trial court's explanation of the relationship between the law of principals and the necessity of this defendant having the specific intent to kill Harrell Clark, no explicit objection was lodged with the trial court, and defense counsel could be said to have acquiesced to the instructions. Ordinarily this issue would be barred from appellate review under La.C.Cr.P. arts. 801 and 841. However, in view of the age of this case and the fact that this is an out of time appeal, we choose to construe defense counsel's statements as an objection.
When considering an allegedly improper jury instruction, a reviewing court must determine whether it is "reasonably *1251 likely" that the jury applied the challenged instruction in an unconstitutional manner, not whether it is possible that the jury misapplied the instruction. In determining whether it is reasonably likely that the jurors misapplied the instruction, the challenged terms are considered in relation to the instructions as a whole. State v. Bunley, XXXX-XXXX, p. 14 (La.App. 4 Cir. 12/12/01), 805 So.2d 292, 303. The test is whether, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. Bunley, XXXX-XXXX, p. 14, 805 So.2d at 303, citing State v. West, 568 So.2d 1019, 1023 (La.1990). A conviction will not be reversed on the ground of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. Bunley, XXXX-XXXX, p. 14, 805 So.2d at 303, citing State v. Motton, 395 So.2d 1337 (La.1981) and State v. Jordan, 97-1756 (La.App. 4 Cir. 9/16/98), 719 So.2d 556.
In the instant case, the trial court initially instructed the jury that they "must not single out any one of these instructions and disregard others. The order in which the instructions are given does not indicate that one instruction is more important than the other." The trial court also told the jury "the defendant is charged with the first degree murder of Harrel Clark", and that "first degree murder is the killing of a human being when the offender acted with a specific intent to kill or to inflict great bodily harm, and in addition, the offender was engaged in the perpetration or attempted perpetration of armed robbery." The trial court further instructed the jury "to convict a defendant of first degree murder, you must find first that the defendant killed Harrel Clark, and secondly, that the defendant had a specific intent to kill or to inflict great bodily harm, and thirdly, in addition the defendant was engaged in the perpetration or attempted perpetration of armed robbery."
The judge went on to instruct the jury on second-degree murder as follows:
Second degree murder is defined as the killing of a human being when the offender is engaged in the perpetration of armed robbery or attempted perpetration of armed robbery, even though the offender had no intent to kill or inflict great bodily harm. In order to convict a defendant under this statute, the jury must be convinced beyond a reasonable doubt that the defendant killed Harrel Clark on the dated [sic] of April 1, 1994, while the defendant was engaged in the perpetration or attempted perpetration of the crime of armed robbery.
The trial court also read the definition of principals from La. R.S. 14:24 in the initial charge to the jury, as follows:
Article 14:24 of the Revised Statutes the Criminal Code defines principles [sic] as "any person concerned of the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel for procure another to commit the crime are principles [sic].... All persons knowing the unlawful intent of a person to commit a crime, committing a crime, who were present consenting thereto, and aiding or abetting, either by furnishing the weapons of attack, encouraging by words or gestures, or endeavoring at the time of the commission of the offense to secure the safety of concealment of the offender or principles [sic] or equal offenders, and subject to the same subject [sic].
During deliberations, the jury asked the trial court to "[p]lease explain again how the law of principles [sic] relates to having the intent to kill as required for *1252 first degree murder." After conferring with the state and the defense on the proper response, the trial court read the statute on principals again to the jury and stated:
As you know, a person to be convicted of first degree murder has to have a specific intent to kill or inflict or [sic] great bodily harm. As it applies to the law of principles [sic], both the person who fires the fatal show [sic], as well as the person alleged to have been a principle [sic] to first degree murder, both have to have specific intent to kill or inflict great bodily harm.
The trial court's use of the statutory definition of principals and its explanation again made clear that specific intent was required of each co-perpetrator.
Without exception, the court's instructions on the law of specific intent crimes, as applicable to this case, included specific intent as an element. Considering that the jury returned a verdict of guilty of second-degree murder, a lesser included offense having nothing to do with principals, it is probable that the jury understood the elements of specific intent and principals but instead, to the defendant's advantage, found that Harrell Clark's death resulted from the defendant's perpetration or attempted perpetration of armed robbery, in the absence of specific intent. Therefore, this assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FIVE:
Juarbe's last argument is that the evidence was insufficient to support his conviction. Defendant does not challenge the evidence with respect to any given element of the crime, but rather he contends generally that the testimony of Michelle Buffington was not worthy of belief. The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements beyond a reasonable doubt. State v. Porter, 2000-2286, p. 11 (La.App. 4 Cir. 12/27/01), 806 So.2d 64, 72, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and State v. Jacobs, 504 So.2d 817 (La.1987).
Michelle Buffington testified at Juarbe's trial. She admitted that she had pleaded guilty in juvenile court to being an accessory after the fact to murder. Michelle testified that as she, Misty, Juarbe, Chambers, and Mason were leaving the French Quarter, Juarbe and Chambers began talking of killing a cab driver. The group parked their car, and Chambers and Misty exited the car to flag down a taxi in order to rob the driver, but they were unable to flag down a taxi. As Chambers returned to the car, Juarbe exited the car. Juarbe and Misty successfully flagged down a taxi. As Juarbe walked toward the taxi, Michelle saw a gun in his hand. As Juarbe and Misty rode away in the taxi, the group followed and parked when the taxi pulled over. Juarbe exited the taxi and got back in the group's car, followed shorty thereafter by Misty. Michelle testified that Juarbe stated "that he blasted the cab driver."
Juarbe argues that Michelle's testimony should be reviewed with caution because she made a deal with the state. Under La.C.E. art. 607, a witness' credibility may be challenged by the introduction of extrinsic evidence of bias or interest, including evidence of the existence of a deal or agreement with the state in which the witness receives any benefit or gain in exchange for his testimony, if the trial court finds that such a deal was made. State v. Meyers, 97-2584, p. 11-12 (La. App. 4 Cir. 11/24/99), 748 So.2d 554, 562.
*1253 Michelle's plea agreement was the subject of numerous pretrial hearings and motions to compel her testimony. As of October 14, 1994, the trial court was assured that Michelle's plea agreement remained in place. On direct examination, the state questioned Michelle about her plea. Michelle was subject to extensive cross-examination and redirect during her testimony. On cross examination, defense counsel clarified that pursuant to a plea agreement with the state, "that all charges were dropped regarding a conspiracy, and [Michelle] pleaded guilty as an accessory to murder." On re-direct, the state addressed the issue of Michelle's credibility and bias during the following exchange, including the possibility that the state had any leverage over Michelle's testimony:
Q [Assistant District Attorney]: Michelle, have I ever asked you to point the finger at Robert Juarbe?
A [Michelle Buffington]: No. You had told me to come up here and tell what happened that night.
Q: And I told you to do what?
A: To tell the truth.
The state raised the issue of Michelle's plea agreement, and the defense was given ample opportunity to cross-examine Michelle. The issue amounts to one of credibility.
It is well settled that credibility decisions by the jury should not be disturbed unless such finding is clearly contrary to the evidence. State v. Porter, 2000-2286, p. 13, 806 So.2d at 73, citing State v. Harris, 624 So.2d 443 (La.App. 4 Cir.1993). A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Porter, 2000-2286, p. 13, 806 So.2d at 73, citing State v. Smith, 600 So.2d 1319, 1324 (La.1992). The critical inquiry for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. State v. Porter, 2000-2286, p. 13, 806 So.2d at 73, citing Jackson, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Here the record evidence supports a finding by this court that the jury did not abuse its discretion in finding the defendant guilty. Therefore, this assignment is without merit.

CONCLUSION
We find no error on the part of the trial court regarding counsel's assignment of error nor with respect to defendant's five pro se assignments of error. Thus, his conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Art. 770. Prejudicial remarks; basis of mistrial

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: ...
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; ...
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
[2] Art. 775. Grounds for Mistrial

Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
[3] Art. 771. Admonition

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the minds of the jury:
(1) When the remark or comment is made by the judge, the district attorney or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
[4] The indictment was subsequently amended to read "2d degree murder" as to Daniel Chambers Reginold Mason, and Misty Buffington. Also, throughout the record, the victim's first name is spelled variously as "Harrell", "Harrel", and "Harold."